# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shawn Hoss, : 
      Petitioner : 
      : 
   v. : No. 241 C.D. 2020
      : Submitted: September 25, 2020
Workers' Compensation Appeal : 
Board (Select Staffing), : 
      Respondent : 

BEFORE: HONORABLE P. KEVIN BROBSON, Judge[1]
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**    **FILED:  February 25, 2021**

Shawn Hoss (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated February 12, 2020.  The Board affirmed the order of a Workers' Compensation Judge (WCJ), denying the review petition Claimant filed against Select Staffing (Employer).[2]  For the reasons set forth below, we affirm the Board's order.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Employer has identified itself using various names over the course of this litigation.  For ease of reference and because the precise name is irrelevant to this appeal, we identify Employer simply as Select Staffing.

On March 26, 2009, while working for Employer, Claimant sustained an injury to his left leg when it was caught under a forklift. Employer issued a Notice of Temporary Compensation Payable (NTCP), describing the injury as a fracture and "crush" injury of Claimant's lower left leg, and began paying temporary total disability benefits. (Reproduced Record (R.R.) at 16a.) The NTCP converted to a Notice of Compensation Payable (NCP) by operation of law. Thereafter, the parties executed a compromise and release agreement (C&R), which WCJ James A. Stapleton (WCJ Stapleton) approved by decision and order dated October 4, 2011. The C&R provided for a payment by Employer to Claimant of $85,000 in satisfaction of Claimant's wage indemnity benefits claim. The C&R further provided that "[a]ll sums paid previously and all sums paid pursuant to this [C&R]" were subject to Employer's subrogation lien pursuant to Section 319 of the Workers' Compensation Act (Act).[3] (*Id.* at 23a.) Section 319 of the Act provides, in relevant part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, . . . against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe . . . . The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, . . . and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

2

On December 1, 2014, the parties entered a third-party settlement agreement (TPSA) using the Bureau of Workers' Compensation's LIBC-380 form. The TPSA listed a third-party recovery of $187,500, expenses of recovery of $85,925.65,[4] and an accrued workers' compensation lien amount of $472,688.47. (*Id.* at 29a.) Under the section titled "Further Matters Agreed Upon," the TPSA provided that Employer's insurer agreed to reimbursement of the workers' compensation lien "at the discounted rate of $50[,]787.17, in exchange for a credit for future medical benefits of [Claimant] that may come due in the future in the amount of $50,787.17, the sum [Claimant] received from the third[-]party claim." (*Id.*)

The next day, Claimant and Employer's insurer, via its recovery agent, executed a separate document titled "Settlement Agreement Workers [*sic*] Compensation Statutory Lien" (Agreement). The Agreement provided that Claimant received a total of $187,500 from various defendants in a third-party suit and that Employer's statutory lien was $471,714.94 as of September 3, 2013. (*Id.* at 30a.) The Agreement further provided that Employer's insurer had agreed to accept one-third of the net settlement,[5] which equaled $50,787.17, as satisfaction of the workers' compensation lien. (*Id.* at 31a.) Additionally, the Agreement provided that Employer's insurer agreed to Claimant's direct receipt of one-third of the net settlement, "but [Claimant] further agreed that [Employer's insurer] would receive a credit for any future medical expenses due and owing to [Claimant] for his workers' compensation claim and/or his medical providers up to the amount

---

[4] This amount appears to include $50,787.17 for attorney's fees and $35,138.48 attributable to other litigation expenses.

[5] It appears that "net settlement" as used in the Agreement refers to the proceeds remaining after the $35,138.48 in litigation expenses were subtracted from the gross settlement amount of $187,500.00.

3

[Claimant] received from the net settlement." (*Id.*) The remaining one-third of the net settlement amount was allocated to attorney's fees.[6] (*Id.*)

Years after the execution of the TPSA and Agreement (collectively, "settlement agreements"), our Supreme Court decided *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947 (Pa. 2018). In *Whitmoyer*, the Court was tasked with interpreting Section 319 of the Act and, specifically, whether the phrase "instalments of compensation" as used therein encompassed both disability benefits and payment of medical expenses. *See* 77 P.S. § 671 (providing that any recovery against third party that is "in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, . . . and shall be treated as an advance payment by the employer on account of any future instalments of compensation").

Relevant to this appeal, the Supreme Court explained that Section 319 of the Act "addresses two distinct scenarios":

> First, the compensation paid by the employer to the date of the third-party recovery constitutes a claim against the recovery, payable immediately upon recovery to the employer. As to this scenario, the General Assembly chose to use the word "compensation" without modification by the term "instalments of." That is, an employer's subrogation right "at the time of recovery or settlement" encompasses all "compensation" "theretofore paid" or "payable" to date. This amount is understood to be the employer's accrued subrogation lien or "total lien."
>
> The second scenario relates to the distribution of net settlement proceeds, namely what is left of the recovery after the employer has been reimbursed for "compensation theretofore paid." Regarding this "excess" amount, section 319 provides that it shall be "paid forthwith" to the employee to be treated as an "advance payment by the

---

[6] Employer then took the agreed-upon credit, though evidence of the current credit balance was not offered in the proceedings before the WCJ in this matter. (WCJ's Decision at 4.)

4

employer"—not as to "compensation" but rather "on account of future instalments of compensation."

*Whitmoyer*, 186 A.3d at 954-55 (footnote, internal citations, and certain internal quotations omitted).

The Court then turned to its analysis of the phrase "instalments of compensation," holding that it referred to the payment of disability benefits only, and not medical expenses. *See id.* at 955-58. The Court thus concluded that, "after satisfying the employer's accrued subrogation lien, which encompasses 'compensation' payments made by the employer toward both disability benefits and medical expenses prior to the third-party settlement, . . . the excess recovery [is] to be paid to the injured employee and to be treated as an advance payment only on account of any future disability benefits." *Id.* at 957. Stated another way, an employer cannot take a credit for future medical expenses against that excess or "balance of recovery." *Id.* at 958 ("[H]aving satisfied its accrued subrogation lien at the time of settlement, an employer is not permitted to seek reimbursement for future medical expenses from the employee's balance of recovery.").

Following *Whitmoyer*, and in light of that decision, Claimant filed a review petition seeking to eliminate Employer's right to its credit for ongoing medical expenses payable for Claimant's work injury. By decision and order dated February 26, 2019, WCJ Terry Knox (WCJ Knox) denied the petition. In doing so, WCJ Knox initially noted that Employer had the right under Section 319 of the Act to demand and receive not only the $50,787.17 it obtained pursuant to the settlement agreements between the parties, but also the $50,787.18 Claimant received,

5

as Employer's subrogation lien was substantially more than what it collected.[7] (WCJ's Decision at 5.)

The WCJ further concluded that *Whitmoyer* did not control this matter. Specifically, the WCJ was unpersuaded that a Supreme Court decision rendered on an interpretation of statutory language could be made retroactive to invalidate the otherwise valid settlement agreements, each of which explicitly included a term that a future credit for medical expenses would be taken in return for the substantial reduction in Employer's initial lien. (*Id.*) Finding that the settlement agreements concerning Employer's subrogation lien were valid and enforceable and that Employer could continue to apply its credit to Claimant's ongoing medical expenses, the WCJ concluded that Claimant was not entitled to relief. (*Id.* at 6.)

Claimant appealed to the Board, which affirmed the WCJ's decision and order. The Board reasoned that, while *Whitmoyer* held that excess recovery from a third-party settlement is to be paid to the employee and treated as an advance payment on account of any future indemnity benefits only, this matter was distinguishable because Claimant did not satisfy the full accrued subrogation lien and there was no excess recovery from the third-party settlement. (Board's Decision at 4-5.) Indeed, Employer's lien substantially exceeded Claimant's recovery. The Board observed that the parties thus agreed that, in exchange for Employer substantially compromising its accrued lien and allowing Claimant to receive a one-third share from the proceeds of the third-party suit, Employer would receive a limited credit for future medical expenses due and owing

---

[7] WCJ Knox additionally noted that, when asked if the settlement agreements should be deemed unenforceable against Employer as well as against Claimant, such that Employer could immediately enforce the full amount of its lien directly against Claimant for his entire share of the settlement proceeds, Claimant had no response. (WCJ's Decision at 5.)

up to the amount Claimant received from the settlement.[8] (*Id.* at 5.) Noting that Claimant specifically bargained for the credit that he claimed was not due and owing, the Board concluded that the WCJ did not err in rendering his determination. (*Id.*) Claimant then petitioned this Court for review.

On appeal,[9] Claimant argues that the Board erred as a matter of law in affirming the WCJ's decision and order because *Whitmoyer* holds that employers are no longer permitted to take subrogation reimbursement for future medical expenses against third-party settlements. Claimant submits that the Supreme Court's interpretation of Section 319 overrides the terms of a third-party settlement agreement and that he and all other similarly-situated claimants should receive relief upon filing a review petition to stop the unlawful taking of credit against ongoing medical benefits. Claimant adds that he is entitled to relief irrespective of the fact that the settling of his third-party claim occurred prior to *Whitmoyer.* Claimant further asserts that, to the extent Employer argues that it has a contractual right to take the credit, that argument should be rejected because, *inter alia*, settlement agreements made under the Act are "tightly managed" and are not simply the products of contract law. (Claimant's Brief at 15.)

Employer counters that the WCJ and Board properly concluded that *Whitmoyer* does not apply to invalidate the settlement agreements negotiated by the parties in this matter, because Employer's accrued lien exceeded Claimant's

---

[8] The Board also observed that the parties executed their agreements years before *Whitmoyer* and that the matter was not in the "pipeline" at the time *Whitmoyer* was decided. (Board's Decision at 5 n.2.)

[9] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated." *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

7

third-party settlement; therefore, Claimant did not fully satisfy Employer's accrued lien at the time of settlement and there was no "excess" or "balance of recovery" owed to Claimant. Employer thus claims that the credit at issue "cannot possibly be 'an advance payment by the employer on account of any future [instalments] of compensation'" as provided for in Section 319 of the Act. (Employer's Brief at 14.) Instead, Employer submits, "both the payment [C]laimant received in 2014 and the corresponding credit relative to future medical benefits [Employer] has been receiving since 2014 were reciprocal obligations created by mutual agreement of the parties to satisfy [Employer]'s accrued claim against the recovery[,] funds which would otherwise have been payable to [Employer] immediately upon recovery." (*Id.*) Employer emphasizes that there can be no dispute that it was entitled to enforce its entire lien against Claimant at the time he settled his third-party litigation and that Claimant would have received nothing at that time but for the agreed-upon modification of the terms of the payment of Employer's accrued lien.[10]

Upon review, we conclude that *Whitmoyer* does not apply to prohibit Employer from taking the agreed-upon credit for Claimant's ongoing medical expenses under the circumstances presented in this matter. As noted in *Whitmoyer*, Section 319 of the Act addresses two scenarios. The first scenario concerns an employer's "accrued subrogation lien," which encompasses both medical expenses and disability benefits paid or payable to the date of the third-party recovery and constitutes a claim against the third-party recovery, payable immediately upon

---

[10] Employer further argues that: (1) *Whitmoyer* cannot be applied retroactively to invalidate the settlement agreements because they were executed in 2014 and no litigation was pending at the time *Whitmoyer* was decided; and (2) if *Whitmoyer* does apply retroactively to prohibit an agreement to reduce the payment to an employer for its accrued lien in exchange for a credit toward future medical expenses, then the agreements must be rendered null and void in their entirety, thereby entitling Employer to enforce its entire accrued lien.

recovery to the employer. *Whitmoyer*, 186 A.3d at 954-55. The second scenario concerns the distribution of "what is left of the recovery after the employer has been reimbursed for 'compensation theretofore paid.'" *Id.* at 954 (quoting 77 P.S. § 671). That excess amount, or balance of recovery, is paid to the employee and treated as an advance payment by the employer "on account of future instalments of compensation," meaning, as announced in the *Whitmoyer* decision, future disability benefits only. *Id.* at 949, 955-58.

While *Whitmoyer* makes clear that an employer cannot take a credit for future medical expenses against the excess third-party recovery paid to a claimant in the second scenario described above, this matter does not fall under that scenario, because, as noted, there was no excess recovery owed to Claimant here. Indeed, Employer's accrued subrogation lien, which Section 319 of the Act addresses in the first scenario outlined above and encompasses both disability benefits and medical expenses, well exceeded Claimant's third-party recovery.

In this regard, Claimant does not dispute that, but for the settlement agreements executed by the parties, Employer would have been entitled to the entirety of the third-party recovery amount under the first scenario addressed in Section 319. Notwithstanding, Employer agreed to take a substantially reduced payment of $50,787.17 and permit Claimant to receive $50,787.18, an amount Employer otherwise would have been entitled to receive, in exchange for a credit for future medical expenses in that same amount. Thus, while Employer is taking a credit for ongoing medical expenses, it is not against any "excess" recovery paid to Claimant in contravention of Section 319 as interpreted by *Whitmoyer*. Rather, Employer is taking the credit against the funds from the third-party settlement that, but for the terms of the settlement agreements Claimant now seeks

9

to invalidate, Employer was initially entitled to receive. We do not read *Whitmoyer* to prohibit such an agreement, whereby the payment to an employer for its accrued lien is reduced in exchange for a credit toward future medical benefits in the amount of the reduction.[11]

Based on the foregoing, we reject Claimant's challenge to the validity of the settlement agreements, which were otherwise found to be valid and enforceable by WCJ Knox. Accordingly, we affirm the order of the Board.

P. KEVIN BROBSON, Judge

---

[11] In light of our analysis above, we need not discuss whether *Whitmoyer* applies retroactively or whether the agreements are null and void such that Employer is entitled to enforce the entire amount of its accrued lien against Claimant.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Shawn Hoss, :
                     Petitioner :
                                  :
            v. : No. 241 C.D. 2020
                                  :
Workers' Compensation Appeal :
Board (Select Staffing), :
                     Respondent :

# **O R D E R**

AND NOW, this 25th day of February, 2021, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

 

                                                  

                                           P. KEVIN BROBSON, Judge